Baldwin, J.
delivered the opinion of the Court.
It seems to the Court that by the express provision of the 9th section of the statute concerning mills, &c., 2 Rev. Code, p. 222, no inquest taken by virtue of that act, and no opinion or judgment of the Court thereupon is a bar to any action which could have been had or maintained if the said act had never been made, other than actions for such injuries as were actually foreseen and estimated upon such inquest: And therefore, and inasmuch as the inquest in the record set forth, finds that no person will be injured by the erection of the dam therein mentioned, that the plaintiff in this action, who was no party to the proceedings in which said inquest was had, is not thereby barred from the recovery of such damáges as he may have sustained by the reflow of the water upon his land, occasioned by such dam.
*101 And it further seems to the Court, that inasmuch as the said dam, and the mill to which it pertains, were established upon the application of William B. Calhoun and James W. Calhoun, as the owners of the land upon which the same are situate, and the defendant in this action asserts in his defence the regularity of the proceedings by which said mill and dam were established, and claims the protection thereof under the title derived by him from the said applicants, it is not competent for him to deny the ownership of the said land by the said applicants at the time of said proceedings, or to assert the continued ownership thereof by the plaintiff, from whose conveyance to said applicants they derived their title.
It further seems to the Court, that the record of the proceedings by which said mill and dam were established, cannot be aided or supplied by parol evidence of what passed before the jury at the time of their inquisition, for the purpose of shewing that the plaintiff assented to the establishment of said dam at the height fixed by the jury, and thereby renounced any claim which he might thereafter have for damages unforeseen and unestimated by the jury; and that although the plaintiff may have attended the inquisition of the jury, and given them information as to the height to which it would be proper the applicants should have leave to erect their dam, and expressed to them his opinion and belief founded upon observation and actual levelling, that a dam twelve feet high would not back the water upon the lands of any person but himself, and that as to himself he was satisfied that he would not thereby be injured; still that such conduct and declarations of the plaintiff would only serve to shew that any injury thereafter actually occasioned him by said dam was not foreseen and estimated by himself any more than by the said jury; and that such conduct and declarations of the plaintiff cannot be treated as a contract with *102 said applicants giving them leave to erect such dam and thereby occasion injury to the plaintiff; for as a contract so far as it allowed them to erect a dam upon their own land, it would be idle and nugatory, and so far as authorized them to injure the plaintiff by backing the water upon his land, it was voluntary, executory and personal to the said applicants, amounting at most to nothing more than a parol license to them, indeterminate in point of time, and revocable at the pleasure of the plaintiff.
And it further seems to the Court, that if, as the evidence at the trial tended to prove, the said William B. and James W. Calhoun complied with the condition imposed by the statute, requiring such applicants to begin to build their mill and dam within one year, and finish the same within three years after the leave of the Court obtained, so as to be in good condition for the public use, but that the height to which the dam was so finished by them was not greater than about nine or ten feet, yet that their so stopping short of the full height fixed by the inquest aforesaid, did not have the effect of precluding them, or their assignees, from after-wards raising the said dam to the full height of twelve feet allowed by the inquest, provided by so doing they should not occasion injury to others.
And it further seems to the Court, that if, as there was evidence at the trial tending to prove, after the mill was finished and in operation, and when the dam was at the height of about nine or ten feet, the said William B. and James W. Calhoun desired to raise the latter somewhat higher, and did so by placing boards on the top to the height of several inches, which was done without consulting the plaintiff, who however soon discovered it, and complained that he was injured by such elevation, and required them to pull it down, and they being satisfied upon examination that the plaintiff was really thereby injured, consented, and took *103 off the increased height, then that this was a revocation of any such parol license as above supposed.
And it further seems to the Court, that if, as the evidence at the trial tended to prove, the said dam was erected and finished by the said William B. and James W. Calhoun as above mentioned only to the height of about nine or ten feet, at which height it was not complained of but acquiesced in by the plaintiff, until their sale and conveyance of the property on which it is situate, to the defendant in the year 1844, and was standing at that height at the time of such sale and conveyance, then that inasmuch as the plaintiff united in said sale and conveyance, the said dam as of that height must be considered as passing to the defendant by the terms and true intent and meaning of the deed of conveyance, and the plaintiff cannot recover damages against the defendant for any injury done him by any reflow of the water to the extent to which it existed at the time of said sale and conveyance; this Court expressing no opinion as to any injury from the reflow of the water, not existing at that time; the declaration only claiming the damages occasioned by the defendant’s raising the dam since his purchase.
And it further seems to the Court, that the instructions and opinions of the Circuit court at the trial, so far as the same conflict with the principles above declared, are erroneous. It is therefore considered that the said judgment of the Circuit court be reversed and annulled, and the verdict of the jury set aside with costs to the plaintiff in error; and the cause is remanded to the Circuit court for a new trial of the issue between the parties; which new trial is to be governed, so far as applicable, by the principles above declared.